*DEARMOND*
*v.*
*COURTNEY.*

---

L. N. & S. J. BENNETT *v.* MARY C. BENNETT, Administratrix, et al.

| 12 | 253 |
| 46 | 749 |
| 12 | 253 |
| 49 | 193 |

The adjudication to the husband of property as held in common with the minor children, when such property was in fact the paraphernal property of the deceased wife, does not divest the children of their title.

Nor is such a title sufficient to form the basis of prescription under Article 3444 of the Civil Code.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff*, J. *Muse & Hardee*, for plaintiffs. *Ellis & Haynes*, for defendants and appellants.

VOORHIES, J. This is an action of partition. In 1853 *Bartholomew Bennett* died intestate in the parish of East Feliciana, where his succession was opened. His first wife, *Sarah Bennett*, died in 1828, leaving four children as the issue of her marriage with him, to wit: *Nancy Leonora, Sarah Jane, Virginia* and *Loretta Ann Bennett*. On the 8th of August, 1838, he caused all the property to be inventoried as acquets and gains of the community, and to be adjudicated to him at the price of the appraisement under the advice of a family meeting held on the 28th of the same month. This appears to have been the only step taken by him in relation to the settlement of the estate of his deceased wife. It does not appear that he ever rendered any account as natural tutor to his minor children. His daughter *Virginia*, married to *Matthew Bowman*, died in May, 1841, leaving an infant, who survived her until the 17th of June, 1841. *Loretta Ann* died in 1850, leaving her father and two sisters, *Nancy Leonora* and *Sarah Jane*, the plaintiffs, as her legal heirs. By his marriage with *Mary C. Flynn*, the defendant, the deceased left six minor children, to wit: *Emma, Lucinda, Cynthia, Orra Amanda, Mary* and *Zachariah T. Bennett*, represented by their mother and natural tutrix, and *William W. Chapman*, as under tutor, who is also a party to this suit. *Emma* was born the 3d of December, 1849, and died the 11th of September, 1856. The plaintiffs claim a slave named *Letty* and her increase as the separate or paraphernal property of their mother, *Sarah Bennett*, who acquired the same under the last will of her deceased father, *Jesse Bennett;* which last will was declared to be valid by the then Parish Judge, on the 29th of November, 1819, and duly recorded in his office. The testator required that the slave *Letty* should be appraised, and after deducting the amount of her hereditary share from such appraisement the legatee was required to account to his co-heirs for the surplus.

From the documents annexed to the bills of exceptions in the record, which we think should have been admitted on the trial below, the following facts may be deduced in relation to *Jesse Bennett's Succession :* On the 7th of October, 1820, the movables were sold at auction and produced the sum of $535 81.

BENNETT
*v.*
BENNETT.

On the 8th of June, 1822, a partition of the slaves, estimated at $3858, in which the sum of $350 was included as the value of the slave *Letty*, was made between the widow and heirs of the deceased, allotting to the former, under the will, the sum of $2900, and to each of the heirs the sum of $86 36 4–11, after deducting their respective collations and adjusting their several accounts. The account of *Sarah Bennett* is thus stated:

"Her share............................................ $86 36 4–11
Balance due her on payment of debts..................... 2 40
                                                        ————————
                                                        $88 76
Deduct amount of her collations......................... 70 00
                                                        ————————
Amount due her....................................... $18 76"

From this we think it is clear that the title to the slave *Letty* was vested in *Sarah Bennett* as her paraphernal property. It is equally clear, under the decision of the *Rivas* case, 13 L. 160, that the adjudication to *Bartholomew Bennett* did not divest his children of their title to this property.

But it is contended, that the receipt of the price by the plaintiffs, particularly *Nancy Leonora*, amounted to a ratification of the adjudication. Were we to give full effect to the deposition of *A. Levi*, annexed to the defendant's bill of exceptions, still we do not think the evidence would be sufficient to establish a legal ratification, 13 L. 175.

We think it is clear that the alleged adjudication is not a sufficient title to form the basis of the prescription relied upon under Article 3444 of the Civil Code, as it is not a title translative of property in the slave *Letty*. From the view which we have taken of the case, it follows that the interest of the respective parties in the slaves in question must be regulated in the following manner, to wit: On the death of *Loretta Ann* one-fourth of her interest descended to her father and the remainder to her sisters, half-sisters and half-brother, in accordance with Article 909 of the Civil Code. On the death of *Emma*, the one-fourth of her interest vested in her mother and the remainder in her sisters and brother, as in the other case. The hire of the slaves must be regulated on the same principle. From the evidence we are not prepared to say that there is any material error in the conclusion of the Judge *a quo* as to the hire of the slaves. All the heirs are entitled to claim the hire or revenues derived from the slaves held as the separate property of their deceased father. The estimate fixed therefor does not appear to us to be unreasonable.

By the admission of the parties in the record it appears that the sum of $500 was paid as the price of the slave *Peter;* during the existence of the community. As this payment does not appear to have been made with the separate funds of the deceased, we think the Judge *a quo* erred in refusing to allow it as a credit to the community.

The Judge also erred in referring the parties to a notary to make a partition between them without having previously directed the manner in which the same should have been made, either in kind or by licitation. C. P. 1027: C. C. 1267; 1 R. 512.

It is, therefore, ordered and decreed, that the judgment of the court below be avoided and reversed, and that the cause be remanded for further proceedings according to law, the plaintiffs and appellees to pay the costs of this appeal.

Mr. C. J. MERRICK recused himself as having been of counsel.